UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

KAREN STEWART                                          PLAINTIFF

VS.                          CIVIL ACTION NO. 3:10CV215TSL-FKB

NCI GROUP, INC. d/b/a
METAL COATERS MISSISSIPPI                              DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Karen Stewart, a former employee of defendant NCI Group, Inc. d/b/a Metal Coaters Mississippi (MCMS) filed the present action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, asserting claims of race and gender discrimination and retaliation.  The case is presently before the court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has not filed any response to the motion, nor requested additional time within which to do so, and the time for responding has now passed.  The court, having considered the memorandum of authorities, together with attachments, submitted by defendant, concludes the motion is well taken and should be granted.[1]

---

[1]    The court has previously dismissed plaintiff's claims of gender discrimination and retaliation to the extent such claims were brought under 42 U.S.C. § 1981, and it has dismissed plaintiff's Title VII claim based on an allegedly discriminatory/ retaliatory failure to promote since plaintiff failed to exhaust such claims.  The court also dismissed a state law claim for negligent infliction of emotional distress.

Defendant MCMS is part of the Coaters division of NCI Group, Inc., and operates a light gauge metal coil coating facility in Jackson, Mississippi, producing metal coil coater products for steel product manufacturers.  Plaintiff, a black female, became employed by defendant in 2001 as a crane/forklift operator.  In 2006, she was promoted to the position of exit end operator in the production department, assigned to the third shift; she remained in that position until she was laid off in October 2008.

In this action, plaintiff complains of a number of employment actions under both discrimination and retaliation theories. Defendant seeks summary judgment on all her claims, contending the evidence of record, including plaintiff's own deposition testimony, fails to create a genuine issue of material fact on any of her claims.

Plaintiff alleges that in January 2008, she was denied a promotion to the position of production clerk on account of her race.[2]  To make a prima facie showing of discriminatory failure to promote, a plaintiff must show that: (1) she is a member of a protected class; (2) she sought and was qualified for an available position; (3) she was not selected for that position; and (4) the

---

[2]     As defendant notes, this claim was the basis of plaintiff's first EEOC charge, which she filed in February 2008. However, plaintiff received a notice of dismissal and right to sue with respect to that charge on September 10, 2008, and did not file suit within ninety days.  She is thus barred from pursuing this claim under Title VII and thus proceeds on this claim solely under § 1981.

employer awarded the position to someone outside the protected class.  Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680–81 (5th Cir. 2001); see also Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004).  It is undisputed that plaintiff was within a protected class, that she was not promoted to the production clerk position, and that the position was filled by someone outside the protected class, namely, Robert Selman, who is white.  However, defendant asserts that plaintiff cannot establish a prima facie case of discrimination because, as she had received two written disciplinary warnings for attendance infractions within six months of applying for the production clerk position, she was disqualified from receiving a promotion under the company's promotion guidelines.  As explained in the affidavit of John Kuzdal, President of the Metal Coaters division, the company's written promotion guidelines explicitly provide that "an employee must have a satisfactory performance record within his or her current position, with no disciplinary actions for at least six months prior to a promotion opportunity."  Plaintiff has offered no evidence to the contrary.

Defendant submits, further, that even if plaintiff could create a triable issue of fact as to her prima facie case, she still could not prevail on her claim since she cannot sustain her burden to show that defendant's articulated reason for selecting Selman for the position was pretext for discrimination.  Under the

3

applicable <u>McDonnell-Douglass</u> framework[3] for analyzing discrimination claims, once a plaintiff has demonstrated a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged decision.  If the defendant carries this burden, then the plaintiff must establish that the defendant's reasons are not true but are in fact a pretext for discrimination. <u>See</u> <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 719-20 (5th Cir. 2002).

    Here, defendant asserts, and has offered ample supporting evidence, that Selman was selected for the production clerk position because he outperformed the other two candidates for the position on a skills assessment test for the position and because he had no attendance infractions in the previous six months.  For her part, plaintiff does not dispute that Selman outperformed her on the skills assessment test or that she had demonstrated attendance issues whereas Selman did not.  Instead, she takes issue with the criteria defendant applied in filling the position. Specifically, she testified that she thought defendant should have awarded the job based solely on seniority, which is how she believes most jobs were awarded.  However, plaintiff has admitted

---

    [3]    <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

she was not aware of defendant's promotions policies, she has offered no proof that defendant typically promotes based solely on seniority, and manifestly, her personal opinion about what the selection criteria were or should have been is immaterial. Finally, defendant has offered uncontroverted evidence that if the position had been awarded based on seniority, as Stewart has contended was its practice, then Elaine Warren, not plaintiff, would have been selected since Warren had more seniority.  For these reasons, plaintiff cannot prevail on her failure to promote claim.

In February 2008, following Selman's promotion, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) charging she had been discriminated against on account of her race.  In this action, plaintiff alleges that thereafter, in June 2008, on account of both her gender and in retaliation for her having filed the EEOC charge, she was issued a three-day unpaid suspension for attendance violations.  As defendant explains in its motion and accompanying affidavit of Kuzdal, under the company's attendance and punctuality policy, employees incur points for attendance infractions, including tardies and unexcused absences, and they receive progressive discipline as points are accumulated, from a verbal warning, to a written warning, to suspension and ultimately to termination.  As is clear from her deposition testimony, plaintiff does not dispute that she incurred

points for a number of attendance infractions, including a final
unexcused absence on June 3, 2008, for which an unpaid suspension
was the disciplinary response provided for in defendant's
attendance policy.[4]  She claims, though, that defendant
discriminated against her on account of her gender and/or in
retaliation for her complaints of discrimination, by refusing to
grant her an "in-house" suspension, which she described as a
suspension which would have allowed her to continue to work and be
paid during the period of the suspension.

     To establish a prima facie case of disparate or retaliatory
discipline, plaintiff must show that:  (1) she is a member of a
protected class, (2) she is qualified for the position, (3) she
was subject to an adverse employment action, and (4) she was
treated less favorably than similarly-situated employees outside
the protected class.  Abarca v. Metro Transit Auth., 404 F.3d 938,
941 (5th Cir. 2005).  Defendant contends plaintiff cannot satisfy
the fourth element of her prima facie case since she cannot
identify any similarly-situated employee who was treated more
favorably under the same or similar circumstances.  More to the

---

     [4]    Plaintiff testified in her deposition that this unpaid
suspension is the basis of the allegation in her complaint that
she was "subjected to discipline which was predicated on
fabricated incidents of misconduct from on or about August 2007
until her termination layoff."  Plaintiff acknowledged in her
deposition that defendant did not fabricate the "incidents" which
were the basis for the discipline, i.e., suspension.

point, she cannot prove that any other employee was permitted an "in-house" suspension for an attendance infraction.

In her deposition, plaintiff testified she believed that defendant's refusal to allow her an "in-house" suspension was discriminatory/retaliatory because she knew of two male employees who were suspended around the same time--Bobby Hammond (a white male) and Derek (a black male whose last name plaintiff did not know)--who received such "in-house" suspensions.  However, plaintiff has offered no competent evidence to substantiate this assertion.  The only basis of her claimed knowledge that Bobby Hammond and Derek were allowed to serve "in-house" suspensions is "what [was] said around the plant."  Plaintiff cannot create a genuine issue of material fact based on hearsay.  See Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial.").  Moreover, defendant has offered uncontroverted evidence that Bobby Hammond and Derek Brown (the only Derek employed by MCMS and hence the only Derek to whom plaintiff can possibly be referring) were treated the same as plaintiff for engaging in identical conduct as they were both issued unpaid suspensions which were served unpaid, not "in-house," upon reaching the unpaid suspension level under the

7

company's attendance policy.[5]  Accordingly, as there is no genuine
issue of material fact as to plaintiff's Title VII claim based on
the suspension incident, that claim will be dismissed.

Plaintiff next contends she was laid off in October 2008,
and was subsequently not recalled to return to work, in
retaliation for her previous complaint of discrimination.  To
establish a prima facie case of retaliation, "a plaintiff must
show that (1) she participated in a Title VII protected activity,
(2) she suffered an adverse employment action by her employer, and
(3) there is a causal connection between the protected activity
and the adverse action."  Stewart v. Miss. Transp. Comm'n, 586
F.3d 321, 331 (5th Cir. 2009).  It is undisputed that plaintiff
had engaged in protected activity and that the layoff was an
adverse employment action.  However, defendant submits that
summary judgment is in order because Stewart cannot demonstrate a
causal connection between her filing an EEOC charge and her
layoff.  Indeed, plaintiff has offered no evidence to suggest that
her layoff was causally linked to her earlier charge of
discrimination.  Defendant, on the other hand, has presented
substantial, uncontroverted evidence to show that plaintiff was
not laid off for retaliatory reasons, but rather was selected to

---

[5]     The court notes that defendant has submitted additional
evidence that none of the other six employees who reached the
unpaid suspension level between January and October 2008 (all of
whom were male and none of whom had filed an EEOC charge) were
allowed to serve an "in-house" suspension.

be laid off based on the same criteria applied to all the
employees affected by the layoff.

According to defendant's proof, prior to October 2008, the
company operated three shifts at the Jackson facility.  However,
because business was down, the company decided that it could only
continue to operate two shifts.  Plaintiff was among twenty-one
employees who were laid off when the third shift was eliminated.
According to defendant, while it does not have a formal layoff
policy prescribing a specific order of layoff, it has never
conducted a layoff strictly by seniority, but takes into account
its ongoing operation needs.  The layoffs in October 2008 were
thus determined by position, and within each position by seniority
and/or job performance.  The company evaluated what positions were
needed to keep the plant running in a two-shift environment and
how many people would be needed in each position.  And since the
company needed only two exit end operators in a two-shift
operation, one of the three exit end operators was to be laid off.
Plaintiff was selected because she had less seniority than the
other two exit end operators.  In fact, with the exception of two
employees who were selected for layoff because of performance
problems, all remaining employees within each position were
selected for layoff based on their lack of seniority.

While plaintiff has suggested that defendant should have
effected the layoff based strictly on seniority-in which case she

9

would have retained a job with the company-defendant was certainly entitled to consider its operational needs first, i.e., its positional needs, and seniority second.  And there is nothing to suggest that its decision to proceed in this manner was retaliatory, i.e., to suggest that the position was pretext for retaliation.[6]

As for the failure to recall plaintiff, the proof belies plaintiff's charge of retaliation.  Defendant's Kuzdal explains that the company does not have a "recall" policy and that persons who have been laid off are formally separated from employment and are not put into any sort of "recall status."  Thus, any person who wishes to be considered for a position, regardless of whether that person is a former employee or a new applicant, must apply for the job and go through the normal hiring process.  And while several employees who were laid off in October 2008 have been rehired, each one of those employees applied for open positions, unlike plaintiff, who testified that she never applied for a position after she was laid off, that she did not express any interest to anyone at MCMS about returning to work there, and that she would not have accepted a job if offered.  In the court's

---

[6]    Indeed, the court notes that defendant has offered evidence which establishes that prior to the October 2008 layoff which was undertaken to eliminate the third shift, it had laid off a number of additional employees when it eliminated a fourth shift, and that layoff had been effected in the very same manner as the October 2008 layoff.

opinion, plaintiff's testimony in this regard conclusively establishes that any failure to recall Stewart was based on Stewart's inaction, not the conduct of defendant and thus precludes any finding of a causal link. See Valdez v. The Clorox Co., 1978 U.S. Dist. LEXIS 14930 (S.D. Tex. Oct. 17, 1978) (failure to indicate interest or apply for jobs that were denied was fatal to proving sex discrimination in layoff, recall, or discharge).

Plaintiff finally contends she was subjected to a racially abusive and hostile work environment based on her race.[7]  A plaintiff who asserts a hostile work environment claim under Title VII or § 1981 must establish that: (1) she belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term or condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. Mota v. Univ. of Texas Houston Health Science Ctr., 261 F.3d 512, 523 (5th Cir. 2001). Defendant submits that plaintiff cannot succeed on this claim because she has no evidence demonstrating that she was subject to unwelcome harassment based

---

[7]    Although plaintiff indicated in her complaint that she suffered a hostile work environment based on gender, in her deposition, she made clear that her only claim relates to an alleged racially hostile work environment.

on race or that such alleged conduct affected her employment in any way.

In her deposition, when queried concerning her hostile work environment claim, plaintiff testified:

> I feel like the whole time – well, the time I
> was you know, working there, I felt like blacks
> were divided and whites were divided and – with
> the promotions and even with the lunch breaks
> And the way that the write-ups – sometimes write-
> ups – one person would get away with one thing
> versus – with the point system – our point
> system was designed where we had points to stay
> on there for a long time, whereas maintenance
> points would roll off 30 to 60 days at one point,
> not the whole time, at one point.  I felt like with
> all of this going on it was a culture divided.

However, as defendant correctly points out, this is nothing more than Stewart's subjective belief, unsupported by any competent summary judgment evidence, and cannot be the basis of judicial relief.  Nichols v. Grocer, 138 F.3d 563, 570 (5th Cir. 1998). See also Williams v. Merck & Co., 381 Fed. Appx. 438, 442 (5th Cir. 2010) (testimony concerning alleged difference in treatment was conclusory and inadequate to satisfy summary judgment burden). Plaintiff has offered no other evidence in support of her hostile work environment claim, and therefore, summary judgment will be granted on this claim, as well.[8]

----

[8]     The court notes that defendant has offered ample evidence of facts which expressly contradict plaintiff's impression of a divided workplace and racially-disparate treatment.  Given the obvious insufficiency of plaintiff's own evidence, the court finds it unnecessary to delineate this proof herein.  Suffice it to note that defendant's evidence on these

Based on all of the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 56 of the Federal Rules of Civil Procedure.

SO ORDERED this 28th day of January, 2011.

                                        /s/Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE

---

issues stands uncontradicted in the record.